UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
EDWARD SHAW,

                Petitioner,

     - against -

                                    **MEMORANDUM OF**
UNITED STATES OF AMERICA,         **DECISION AND ORDER**
                                    03-CV-3016 (ADS) (ARL)
                Respondent.
----------------------------------------------------------------X

**APPEARANCES:**

**EDWARD SHAW**
Petitioner *Pro Se*
1249 East 72nd Street
Brooklyn, New York 11234

**UNITED STATES DEPARTMENT OF JUSTICE,**
**ANTITRUST DIVISION**
26 Federal Plaza, Room 3630
New York, New York 10278
     By:    Debra Brookes, Attorney
             John W. McReynolds, Attorney

**ROSLYNN R. MAUSKOPF**,
**UNITED STATES ATTORNEY, EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, New York 11722
     By:    AUSA Tanya Y. Hill

     This case involves charges that the petitioner Edward Shaw ("Shaw" or the

"Petitioner") took part in a bid-rigging conspiracy in violation of the Sherman

Antitrust Act, 15 U.S.C. § 1 (the "Sherman Act"). On April 30, 2002, pursuant to a

Cooperation Agreement (the "Agreement"), the Petitioner pleaded guilty to a one-

count information charging him with conspiring to rig bids in violation of the Sherman Act.

Presently before the Court is a motion by the petitioner to set aside or vacate the judgment of conviction pursuant to 28 U.S.C. § 2255 ("Section 2255") on the ground of ineffective assistance of counsel. For the reasons stated below, Shaw's petition is without merit and is denied.

## I. BACKGROUND

On October 18, 2002, the Court accepted Shaw's plea of guilty to the one count information that was previously taken by United States Magistrate Judge Arlene R. Lindsay. He was also sentenced to three years probation, with special conditions that he serve four months home detention and undergo gambling therapy. According to the Government, on November 5, 2002, Shaw filed a notice of appeal This appeal was withdrawn in May 2003.

In the instant petition, Shaw claims that he received ineffective assistance of counsel in violation of the Sixth Amendment because: (1) his attorney Frederick Schurr, Esq. ("Schurr"), disclosed confidential communications to the Government that was allegedly used against him; and (2) Schurr recommended that he plead guilty despite the absence of evidence of a "relevant market" and an "antitrust injury."

**A.    The Nature of the Conspiracy**

In or about January 2001, the Government uncovered a five-year long bid-

rigging conspiracy involving Shaw and a number of other co-conspirators affecting public auctions conducted by the Nassau and Suffolk County Sheriffs' Offices. This scheme involved an agreement that the individuals would not bid against each other during the official auction. Rather, the group set a pre-determined price at which one designated individual was to bid on the auctioned property on the group's behalf instead of each member of the group bidding competitively against each other. In cases where at least three bids were required, two other conspirators would first submit intentionally low bids, thus enabling the designated bidder to win the property with a subsequent bid. Because the final bid was less than that which would have resulted had there been legitimate competitive bidding, this scheme prevented the respective creditors from receiving the maximum value of the auctioned properties.

The Government's investigation revealed that if the designated bidder won the particular item during the official auction, the co-conspirators would then hold a second, private "knock-out" auction. During the knock-out auction, the group would bid against one another to determine who would ultimately own the property. When a co-conspirator reached his dollar limit for a particular item, he stopped bidding and was "knocked out" of the private auction. The "knocked out" individual would receive a payoff from the winner of the knock-out auction that was based on his last bid before being knocked-out. After reimbursing the designated bidder in the official action, and compensating the other conspirators, the winner of the knock-out auction

3

would take the item. The price that the winner of the item ultimately paid for the item was less than what would have been paid had there been legitimate competitive bidding at the official auction.

The Government's investigation further revealed that, when a third-party interested in bidding on an item appeared at the official auction, one of the co-conspirators, usually Shaw, would demand a cash payment from the third party in exchange for an agreement that the group would not bid against that outside party. To induce the third party to agree, Shaw would threaten to intentionally bid up the price of the property so that the third-party would pay more for the property. The cash payment by the third party was then divided among the group members.

According to Shaw's petition, in January 2001, a special agent of the FBI came to his home and accused him of violating the Sherman Anti-Trust Act. The special agent advised Shaw to contact him after he retained a lawyer. Shaw subsequently contacted Norman Langer, Esq. ("Langer"). Langer had often hired Shaw to attend auctions in order to bid on property belonging to Langer's clients that was being sold at auction to collect on judgments against them.

The Government has attached as an exhibit to their opposition papers a letter dated July 31, 2003 from Schurr to John W. McReynolds, Attorney, Department of Justice, Antitrust Division. In this letter, Schurr explains that on January 26, 2001, he contacted the Special Agent and set January 29, 2001 as the date for a full disclosure

by the Government of all the evidence against Shaw. At the January 29, 2001 meeting with McReynolds and Debra C. Brookes, Attorney, Department of Justice Antitrust Division, Schurr heard audio taped recordings made by a government undercover agent which revealed that Shaw told the undercover agent that he and his co-conspirators would not bid the price up in exchange for $300.00. Schurr also learned that the Government intended to seek indictment against Shaw and his co-conspirators for "mail fraud, tax evasion, fixing auctions, conspiracy, and violation of the Sherman Antitrust Act." Also at this meeting, the Government suggested the possibility of Shaw cooperating with the government in exchange for a 5K1.1 cooperation letter to reduce his exposure to incarceration.

After several meetings with Schurr, Shaw decided to cooperate with the Government. On February 20, 2001, Shaw and Schurr met with McReynolds, Brookes, Assistant United States Attorney ("AUSA") Tanya Hill, as well as two FBI Special Agents at which Shaw narrated in complete detail the nature of the Conspiracy with the hope of obtaining a 5K1.1 letter.

**B.     The Plea and Sentencing Proceeding**

On April 30, 2002, Shaw pleaded guilty before Magistrate Judge Lindsay to a one count information charging him with conspiring to rig bids in violation of 15 U.S.C. § 1. Schurr represented Shaw at the plea allocution. At this court proceeding, the Petitioner stated that he reviewed the Agreement with his attorney and understood

the terms and conditions of the Agreement. Shaw also stated that he understood the charge against him. Shaw also explained in detail how he and the other co-conspirators agreed to manipulate the public auctions in the manner described above. Shaw also stated that he knew that he was bidding on property that came across state lines and that by entering this agreement he was "influencing the bidding process." Of importance in the determination of this motion, is the Petitioner's statement that as of that time, he was satisfied with his legal representation.

On October 18, 2002, this Court accepted the Petitioner's guilty plea and sentenced Shaw to three years' probation, with special conditions that he serve four months home detention and undergo gambling therapy.

## II.  DISCUSSION

Shaw contends that the judgement of conviction entered against him as a result of his plea of guilty was the result of ineffective assistance of counsel in violation of his Sixth Amendment rights because: (1) his attorney Frederick Schurr, Esq., disclosed confidential communications to the prosecution which was used against him; and (2) Schurr erred in failing to properly research the facts of this case so as to ascertain that he was not guilty of the crime charged because the Government lacked proof that there was a "relevant market" causing an "antitrust injury."

**A.  Standard of Review**

Pursuant to section 2255, a federal prisoner in custody "may move the court

which imposed the sentence to vacate, set aside or correct the sentence" on the basis that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.  The burden of proof is on petitioner to establish his constitutional claims by a preponderance of the evidence.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir.), *cert. denied*, 531 U.S. 956 (2000); *see also Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997).

Although generally a petitioner who has failed to raise an issue on direct appeal may not do so in a § 2255 petition, *see Underwood v. U.S.*, 166 F.3d 84, 87 (2d Cir. 1999), claims of ineffective assistance of counsel may be brought for the first time in a section 2255 petition.  *Frederick v. Warden, Lewisburg Correctional Facility*, 308 F.3d 192, 197 n. 6 (2d Cir. 2002).  Such is the case because such claims "would not likely be made on direct appeal by an attorney who had represented the petitioner at trial based upon that attorney's own incompetence." *Riascos-Prado v. United States*, 66 F.3d 30, 34-35 (2d Cir. 1995).  In addition, " 'the district court [is] the forum best suited to developing the facts necessary to determining the adequacy of representation . . . .' "  *United States v. Doe*, 365 F.3d 150, 153 (2d. Cir. 2004) (quoting *Massaro v. United States*, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003)).

Finally, the Court is mindful that the petitioner is proceeding *pro se* and that

his submissions must be liberally construed in favor of the petitioner. *See Chang v. U.S.*, 250 F.3d 79, 86 n. 2 (2d Cir. 2001).

**B.     Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984); *see also Larrea v. Bennett*, 368 F.3d 179, 183 (2d Cir. 2004).

In evaluating the first prong of this test, the Court must " 'indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.' " *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689) (alterations in original); *see also Larrea*, 368 F.3d at 183. As for the second prong, to show prejudice, a defendant must demonstrate " 'that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.' " *United States v. Levy*, 377 F.3d 259, 264 (2d Cir. 2004) (quoting *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998)). " 'A reasonable

probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland*, 466 U.S. at 694)). "The court's central concern is not with 'grading counsel's performance' but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.' " *Aguirre*, 912 F.2d at 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 696-97).

Because "it is all too tempting for a defendant to second-guess counsel"s assistance after conviction," *Strickland*, 466 U.S. at 689, the Second Circuit has instructed that a reviewing court should be "highly deferential" in assessing counsel's performance. *See Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052). Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that federal district courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697. In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

> **1. As to the claim that Frederick Schurr, Esq., disclosed confidential communications.**

In his petition, Shaw explains that he is "morally certain that [Schurr] proceeded to the Government, to share the information that [Shaw] told him, in order

for the Government to make a colorable case against me, for him to try to justify the fifty thousand dollar fee." However, the Petition is lacking any specific details as to the content of the alleged disclosure; or the date, time, place, and to whom such disclosures were made. Nor does Shaw identify any facts or details that the Government had learned that was based on privileged information rather than information that the Government had obtained independently.

These conclusory allegations are insufficient for the Court to conclude that Schurr disclosed any confidential communications to the Government. Nor can the Court conclude that Schurr's performance did not meet the objective standard of reasonableness under prevailing professional norms. Even assuming the alleged disclosures were made by Schurr, the Petitioner fails to satisfy his burden as to the second prong of the *Strickland* test, namely that the outcome of the proceeding would have been different, but for Schurr's performance

Reading Shaw's petition liberally as the court is required to do with all *pro se* petitions, Shaw may also be asserting an ineffective assistance of counsel claim based on an alleged conflict of interest. Shaw's petition is riddled with allegations that Schurr had a conflict of interest because "Schurr's purpose was to make certain that [Shaw] not mention . . . Langer's name" and that "Schurr's motive was to literally steal fifty thousand dollars from [him] under the guise of a legal fee."

It is well-established that "[a] defendant's Sixth Amendment right to effective

assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Schwartz*, 283 F.3d 76, 90 (2d Cir. 2002). In addition, prejudice will be presumed when a defendant shows "(1) an actual conflict of interest that (2) adversely affected his counsel's performance," *Id.* However, once again, Shaw's petition is lacking any details as to this alleged conflict; how the presumed conflict caused an "actual lapse in representation," *Locascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005) (internal quotation and citation omitted); and how the outcome of this case would have been any different. *See Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980); *Eisemann v. Herbert*, 2005 U.S.App. LEXIS 4134, *9-10 (2d Cir. 2005). Finally, with regard to Shaw's assertions that Schurr's legal fee in the amount of $50,000 was excessive, the Court notes that a Section 2255 petition is not the proper forum for a fee dispute. Furthermore, the petition indicates that Shaw has filed a grievance with the Nassau County Bar Association with regard to these assertions against Schurr.

Accordingly, Shaw failed to demonstrate that Schurr had a conflict of interest that prejudiced the legal representation that he received, and this argument must similarly fail.

**2. As to the claim that Schurr erred in recommending that he plead guilty despite the absence of evidence with regard to a "relevant market" or proof of an "antitrust injury."**

Shaw next argues that Schurr's representation violated the Sixth Amendment because he failed to properly research the elements of a criminal antitrust violation, and therefore erred in advising him to plead guilty. In particular, Shaw contends that Schurr failed to advise him that the Government would not have been able to establish that there was a "relevant market" or an "antitrust injury." However, as set forth below, a relevant market and an antitrust injury are not required elements to prove a criminal violation of Section 1 of the Sherman Act.

Section 1 by its terms makes unlawful: "[e]very contract combination . . . , or conspiracy, in restraint of trade . . . ." 15 U.S.C. § 1. To prove a criminal violation of this section, the Government must establish: (1) an agreement to a joint action such as a conspiracy formed by two or more entities; (2) that the defendant knowingly joined this conspiracy; (3) the agreement unreasonably restrained trade or commerce; and (4) that the conspiracy concerned goods or services in interstate commerce. *See* 3 L. Sands et al., Modern Federal Jury Instructions ¶ 58.04, Instr. 58 - 44 (2003); *See United States v. Koppers Co.*, 652 F.2d 290, 295-96 (2d Cir. 1981), cert. denied, 454 U.S. 1083 (1982); *United States v. Gypsum Co.*, 438 U.S. 422, 435-43, 98 S. Ct. 2864, 57 L. Ed.2d 854 (1978); *UCAR Intern., Inc. v. Union Carbide Corp.*, 2004 WL 137073, at * 16 (S.D.N.Y. Jan. 26, 2004).

Shaw also contends that there can be no antitrust crime because there was no evidence that he or his co-conspirators paid anything less than fair value for any of the property. Not so. If the co-conspirators had legitimately bid against each other during the "official auction," the sale price would presumably have been higher. Thus, Shaw's activities artificially and unlawfully reduced the price that the relevant items sold at auction. For that reason, certain activities including bid-rigging are so anti-competitive that they constitute "per se" violations of the antitrust law. *See Koppers Co.*, 652 F.2d at 294; *see also United States v. W.F. Brinkley & Son Constr. Co., Inc.*, 783 F.2d 1157, 1161 (4th Cir. 1986) ("[W]here two or more persons agree that one will submit a bid for a project higher or lower than the others or that one will not submit a bid at all, then there has been an unreasonable restraint of trade which violates the Sherman Antitrust Act."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 0328, 1996 WL 363156, at *9 (June 28, 1996) ("Courts have specifically classified bid-rigging as a form of price fixing that constitutes a per se violation." (citing authorities)).

Such "per se" bid rigging activity is presumed to be an unreasonable restraint on trade and therefore illegal because of its "pernicious effect on competition and lack of any redeeming virtue." *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 78 S. Ct. 514, 2 L. Ed. 2d 545 (1958). In this type of case, the Government must only prove the existence of an agreement to partake in the "per se" illegal activity, *see*

*Koppers Co.*, 652 F.2d at 296 n. 6, and that the activity in question concerns goods or services in interstate commerce. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 66-67 (2d Cir. 1997) (Stating that the commerce requirement of the Act may be satisfied: (1) "where the defendant's conduct directly interferes with the flow of goods in the stream of commerce (the 'in commerce' test); or (2) where the defendant's conduct has a substantial effect on interstate commerce (the 'effect on commerce' test) (citations omitted)). Therefore, Shaw's contention that Schurr erred by not properly advising him as to the elements of a criminal antitrust case is without merit.

The Court similarly finds Shaw's remaining arguments to be without merit. Accordingly, Shaw has failed to demonstrate ineffective assistance of counsel and his petition is denied in its entirety.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Petitioner's motion to set aside or vacate the judgment of conviction pursuant to 28 U.S.C. § 2255 is denied; and it is further

**ORDERED**, that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is **DENIED**, as the Petitioner fails to make a substantial showing of a denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed.2d 931

(2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000);

and it is further

> **ORDERED**, that the Clerk is directed to close this case.
>
> **SO ORDERED.**
>
> Dated: Central Islip, New York
> May 31, 2005

ARTHUR D. SPATT
United States District Judge
